23-17-56 Joseph P. Stanislaw et al. v. Thetford Township MI et al. Oral argument not to exceed 15 minutes per side. Mr. Ginsberg for the Plaintiffs and Appellants. Joseph and Lorraine Stanislaw. I'd like to begin, if I may, by highlighting for the Court that after everything that the Appellants have gone through in 2018 and 2022, they finally got the licenses that they've been asking for since 2005. They had them from 1983. They had them until 2005. They were removed from them from 2005. And in 2005, I'd like to highlight for the Court that the Appellants were in the prime of their lives for purposes of their business. At that point, they were in their 40s. They had the experience. They had the wisdom. They had the financial wherewithal to operate their business to its maximum capacity. And Thetford Township removed that ability from them, only to give it back to them 15 years later. But it's not clear to me what is exactly in front of us. I thought the 2005 denial was the part that was already litigated. And this is about stuff that has happened. Otherwise, res judicata would apply. It is, Your Honor. I use that just to remind the Court that the parties can – and I'll have further presentation on that – but the fact is that the licenses were removed from them in 2005. They were denied to them again in 2011. And now is that – it's not clear to me that that is before us either. And the reason I say that is I thought the 2011 denial was upheld in the state court system. No, Your Honor. It was – The circuit court did not uphold the zoning board's denial of the 2011 application? Correct. I think – I believe the circuit court remanded it to the zoning board of appeals for further – I'm not certain that's what the Redbridge says. So when you were approved in 2018 and 2022, were there additional applications? Or was that the same application dating back to 2011? No. The appellants reapplied in 2018 for the Class B license and then in 2002 for the Class B, C, and E licenses. And so in 2018, they were granted the – just the B license that they sought in 2005, which was denied to them and again denied in – I'm sorry. I may have said 2011. It was 2013. And in 2022 is when the licenses were denied – excuse me, the licenses were granted for B, C, and E, which is the licenses that they had beginning in 1983. And so what I wanted to illustrate with that point was simply that – So I'm looking at plaintiffs appealed the – this is the red brief. Plaintiffs appealed the ZBA decision again and on June 6, 2012, the county circuit court affirmed the decision, finding that the law had been followed, proper procedure has been followed, there's competent material and substantial evidence on the record with respect to the procedures of the zoning board of appeals and Mr. Angus, and no abuse of discretion on the record before the ZBA. Correct. And so they reapplied in 2013 and that's when Mr. – Well, this says it's on June 6, 2012. Okay. So you were – so this isn't about the 2011 because it was upheld in 2012. Correct. I misspoke, Your Honor. I meant 2013, not 2011. I see. Yeah. So they were denied again in 2013 and Mr. Angus essentially said for the same reasons, although there were some discrepancies there as well. But the point that I'm trying to make is that in 2018 and 2022, the licenses that were denied to them all along were granted. And so the explanation that Thetford offers for that is, well, the ZBA made a mistake, the township supervisor may have made a mistake in the past. Here you go. Here's your licenses, which is fine. We appreciate that. But it doesn't take away the fact that for the 15 years prior, those licenses were denied to them. So this is a very difficult standard for you to meet, the class of one theory. And it wasn't obvious to me why the fact that neighbors complained was itself an adequate, relevant justification for investigating your client's property. I assume that there is no evidence that any other neighbors of the other facilities complained. I think you would agree with that, wouldn't you? That's not in the motion record, Your Honor? So why? I just, I mean, local officials are probably, I know there's some shenanigans about whether the person who was complaining was part of government. But just as an abstract matter, it seems to me that it's perfectly appropriate for local officials to respond to their constituents' concerns. And so if a neighbor thinks that there is a junkyard next to their property, it's close together, it's harming their property value, and they complain about it, it's not obvious to me why that wouldn't be a rational reason to investigate as compared to not investigating others. Now, maybe it turns out the investigation was wrong, as perhaps you found in 2018. But why wouldn't that be itself a rational reason, just the fact that neighbors were complaining? Two points, Your Honor. First of all, neighbors complain, that doesn't mean that the township officials are free to disregard the law. If neighbors complain, the township should have done an investigation and told the neighbors they're fully compliant, they're in the general commercial district, they're fully licensed and properly zoned for their operations. So the fact of the neighbors complaining in and of itself is not... Well, isn't it a rational reason for them to investigate and think that maybe there was a violation here, maybe they made a mistake? The appellants have no problem with an investigation. The appellants have a problem with the fact that the township did not abide by the law and came up with a plethora of reasons, all of them that were ultimately found to be improper. So, for instance, they said the fencing was required, fencing was not required. They said vehicles on property without license plates, but these vehicles were not registered to anyone at that particular time. They were used vehicles that were for sale. They would only get license plates once they were registered by an owner. They said that there was a residence on the same parcel as the business. Again, that is not in the Ordinance 78. That is not a bar to obtaining a license or municipal approval. So what's also strange about your theory is usually a class of one is uneven enforcement where everybody's in violation. I recognize your theory now is everybody was compliant and you were singled out. But why isn't the obvious response there as well than sue in state court? If you're compliant and it's a violation of state law, you'll be vindicated that way rather than a constitutional claim. And that seems to have happened here. I hate to say it, Your Honor, but I took over this case in the middle. So why did it take five years for there to be a decision on a 2013? So there's a 2013 application, you say. I don't see anything in the record of what happened to that application. That was denied, Your Honor. And that is at... Was that the one because it was the theory that you can't live at the business? I didn't see a denial. The disapproval was... It was for the same reasons as the 2005 disapproval. It was denied, again, by Mr. Angus for the same reasons as he put forth in 2005. But to Your Honor's point, it's a difficult standard to meet, but it's not impossible. And so when this case was before this court on Stanislaw I, the court said, well, you didn't find any comparators. We now have four comparators. Three of them are in this exact same position as the plaintiffs, as the appellants. And then there's also the Monster Auto, which is in violation. So Monster Auto, though, for instance, do we know that it's had a license? I thought the record is quite unclear. I think the only thing about Monster Auto that we have in the record are just the pictures, right? Do we have what their license was, what their history was? We do not, Your Honor. The only thing that we have in the record with respect to Monster Auto is that it's in the same general commercial district as the plaintiffs. And it is operating an auto graveyard. It was. It closed in, what, 2019? Yes. Well, right. Maybe it closed because it was in violation of, do we have that in the record? We don't have that in the record. And presumably if that was the reason, then Thetford would have submitted an affidavit or a declaration from someone with knowledge. They did not do that in support of their certification. There is a fair amount. That's another question I had. There is a fair amount of kind of lack of concrete detail about are these businesses the same size? Do they have, like, residents right next to each other? So who do we hold that against? I know you have the burden of proof to prove your claim, but they have the burden of proof to obtain summary judgment. It's not obvious to me what we should say about this lack of just basic understanding of what these properties look like. And I think that's correct, Your Honor. There was no declaration or no sworn affidavit provided by anyone in connection with Thetford Township to push back on my client's declaration, which did say that each of the three comparators were all roughly the same size, same business, same operation, all had cars in various states of disrepair. And so I think it was incumbent upon Thetford Township to say, well, yes, but they never did that. I'm going to interrupt you just a minute. We don't have any lights on. But this timer seems to be going up in terms of time. Oh, he's over. Okay. I'm sorry. I'm way over, Your Honor. Sorry. I just, I was a little bit oblivious to what was going on. And when I looked over there, I didn't realize the time was up and it was going back up. I think you're done. I am done. You didn't finish Judge Murphy's question. I believe I've answered it, Your Honor. So I'll reserve the- You just got another two minutes and 19 seconds. Yes, I did. My oblivious day. I'm going to back away slowly and with appreciation. Good morning, Your Honors. May it please the Court. Thomas Landa on behalf of Thetford Township, Dennis Bloss, Stuart Worthing, Robert Swartwood, and Mark Angus. This Honorable Court should affirm the District Court's decision granting defendant's motion for summary judgment because plaintiffs have not met their heavy burden to prevail on a class of one equal protection claim. I briefly want to start out by addressing a point made by Judge Murphy on the procedural context of what has transpired here. As the Court mentioned, the procedural history post-2009 is necessary for some context on plaintiff's application process. Post-2009, we have one denial, and that occurred on February 22, 2011. That one was upheld by the Circuit Court. That's correct, Your Honor. Was there an application in 2013? No, Your Honor. So that was just a misstatement of fact. Yes, Your Honor. The next application that came in was in 2008. In a class, I apologize, 2018, a Class B license was granted to the Stanislaus. So what was going on between 2000 and the 2013 denial and 2018? They were just investigating the Stanislaus work? Because there was some commentary at the Zoning Board about this, whether you can live on the property that you're running a business from. Yes, Your Honor. So after 2012, after the Genesee County Circuit Court affirmed the ZBA's decision, the Stanislaus went through multiple ZBA hearings to determine what we can do to operate on this property. So they sought an ordinance interpretation from the ZBA, where the ZBA basically found that if you do this, you can get your licenses. And so that process took place over the course of three or four years. Once they realized that some of the decisions allowed them to get their license, this lawsuit ensued for a Class of 1. So in some respects, they could have sued earlier to vindicate their rights under state law. I take it you would agree with that? Yes, Your Honor. They could have sued earlier. And one of our arguments in the district court was the statute of limitations had in fact ran. But the district court declined to address that because it found that they didn't meet the elements of a Class of 1 equal protection claim. So, yes, it would be our position that the trigger date for their lawsuit presumably would have been 2012, after the ZBA's decision was affirmed by the Genesee County Circuit Court. Now, taking that context in decision-making into place, plaintiffs, as this court pointed out, have a very high standard to meet. Plaintiff must prove that they were intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. With respect to the similarly situated individuals identified by plaintiff, each one, and it's in the record below, has distinct differences. John, Bilat, and Sons only applied for a Class B license. The Stanislaus applied for a Class B, C, and E. Duquette's Garage only applied for- Why does that matter? It is- If they both applied for Class B, I mean, you could have denied C and D and just given them B. I mean, why is that difference relevant? For the analysis of similarly situated, that analysis is relevant to determine whether or not they treated someone differently. For the purposes of the denial, the denial process really requires two forms. There's a zoning approval form and there's a municipal approval form. From the zoning approval form, when someone's applying for Class B, C, and E, the denial based on the zoning was because C and E are not zoned for the location in which the Stanislaus property was. C is used auto parts and E is distressed vehicle sales. For the purpose of those types of licenses, those inherently have a certain level of junk on the property, cars in disrepair, so both the zoning approval form and the municipal approval form were denied in 2011. I'm not following. I'm sorry. Why was the B denied? I believe the record, the evidence in the record shows that the B was denied on a flat basis. Everything was denied. It wasn't just solely given to them based on we're going to deny two but give you B. The whole form was denied. Was there a reason B was denied other than that two other applications were being denied? The reason B was denied, the reasons that were given and that were upheld by the Genesee County Circuit Court, was it wasn't properly zoned, the property was blighted, that there was cars in disrepair on the property, and that's the reason it was denied back in 2011. Why didn't you, so the affidavit of Mrs. Stanislaw suggests that these other properties were similarly blighted, and it seems to me it would have been useful for you to put in more evidence showing distinctions between these properties. We have no photographs of what they look like. We don't know this except in vague references, the differences between them. So what do we do with the fact that if there is a dispute of fact on that, doesn't that mean we have to have a trial? Your Honor, it would be the appellee's position that there was enough evidence in the record that the properties had some material distinctions despite taking pictures of them being blighted. There really was a variety of different things on why they were similarly situated. Blight wasn't just one of them. So you say blight, and you dismissed the blight charges against the Stanislaws, and Mrs. Stanislaw has a comment in her affidavit that our property was essentially the same throughout the entire time. So don't we have to take that as a fact, given the standard of review on summary judgment? Yes, Your Honor. You do have to take that as a fact, that the fact that they were cited with blight, and they must have... So you dismissed it, and nothing changed. The theory would be there really wasn't blight, because you allege that you dismissed the blight charges because they fixed the property, and the affidavit suggests that they did nothing. Well, Your Honor, the matter was an ordinance violation, a criminal proceeding. There could have been a variety of different circumstances on why it was dismissed. I don't have knowledge of why exactly it was dismissed. It's my understanding, based on the evidence that I have seen, that the blight charge was dismissed because they brought the property up to a certain level of compliance that satisfied the prosecutor. Was there a zoning change? Yes, Your Honor, there was a zoning change, and I believe it was back in the 80s. No, I'm asking because if I understood you correctly, you said that the DCE application was denied because it wasn't zoned properly, that these were not permitted uses, right? Yes, Your Honor. But eventually they got them back, right? So that's why I asked if the zoning changed. I do not believe the zoning has changed, Your Honor. And to address the point on how they received the licenses in 2022, this occurred during the duration of this current federal lawsuit, and we don't know the reasons for granting it. I was reading the Green Genie case that was decided by this circuit last night, and they talk about significant gaps in time, in context, suggests a change in policy, administration, differing opinions, but it's not disparate treatment. There's a period of time that they didn't have them licensed. In 2018, when the township has been telling the Stanislaus, just apply for a Class B license, just apply for a Class B license, the ZBA record clearly reflects that if you apply for a Class B license, you will get it. The ZBA indicated that in the proceedings ending in 2012. They applied for the Class B license in 2018, and they received it. So what happened in 2022, it is the appellee's position that by obtaining an additional C&E, it's really irrelevant for the analysis of whether or not they can meet this heavy burden to maintain a Class of 1 equal protection claim. The last point I do want to hit is the assuming that the court finds that the entities that they identified are similarly situated, which we deny. Plaintiffs have failed to show any evidence there was a rational basis, there was no rational basis for such difference in treatment. The defendant has no obligation to produce evidence to sustain the rationality of those issues. Its choice is presumed valid unless they can negate every conceivable basis for the township's decisions. Do you argue that the fact that constituents of the community complained, the neighbors complained about this facility, and no neighbors, at least as the record shows, complained about any of the other facilities is a relevant factor in determining whether to take action against the facility? In a roundabout way, Your Honor, we argued that mere neighbor complaints or issues with the property is not enough to negate every conceivable basis. We did not argue that neighbor complaints is a rational basis for denial because we had a variety of other reasons on why we were denying these licenses. But we said, you know, appellant's position this whole time is all these influential neighbors complained, they had issues with the property, so the township was on a campaign to stop this business. And really, Your Honor, what we see here with this situation is this lawsuit and this dispute has gone on for 17 plus years. There's a variety of different administrations. There's a variety of different individuals. There's not one single individual that you'll see in the record that we're singling these individuals out, taking multiple steps to stop these individuals. What you'll see is Mark Angus, he denies two licenses. He's no longer involved in anything. You have boards, collective boards voting to make decisions. So really, could there have been mistakes? Certainly. Were there mistakes? Possibly. As Judge Murphy, if you pointed out earlier, a case like this is well-suited for state court where they have a problem with the decision, they believe it violates state law, as the appellant pointed out this morning, that they believe the decisions violated state law. If they believe that the decisions violated state law, pursue that in the state courts. Their decisions violated the zoning ordinance. We're entitled to this license. They could have sought that through state court, but they didn't. I see that my time is running close. I would ask that the court affirm the decision of the district court. Thank you. Thank you, Judge. I'm going to be mindful of the fact that I went over last time. Can I start with a question? Of course you are. It was something that your friend on the other side said. Section 1983 does not allow for vicarious liability. By which I mean holding one defendant liable for another defendant's actions. I take it you don't have a Monell claim anymore. You didn't suggest a policy or practice as far as I can tell in your brief. You're only suing the individuals now. How does the fact that you're only suing the individuals, doesn't that mean you have to show that each individual engaged in a class of one violation? I guess that would be my first question. There is no Monell claim, Your Honor, but there is a claim against the township itself. That would be the Monell claim. You can't sue a township unless you show a pattern or practice. I believe that's the case under Section 1983, but not necessarily under a class of one theory. 1983 is the cause of action that allows you to pursue your constitutional claim. Your constitutional claim is class of one. Your Honor, I'd have to research that issue. It was not brought up below. What's in the record shows that each individual, for instance, had knowledge of these comparators. It seems to me if you're saying that an individual is singling you out and there are comparators that are not being singled out, you would have to present evidence that shows that individual. Angus or any of the other people that you sue shows that they actually approved the other applications. Maybe there's support for that for Angus, but it's not obvious to me that there's support for that for the other individuals. Again, Your Honor, this was not an issue that was vetted at the district court. I think that, as my colleague pointed out, this has been going on for 17 years, so all the officials at the township are aware of everything that's been going on. I don't have the transcript of the Zoning Board of Appeals to tell the court conclusively that the other officials of the township were aware of the other comparators, but I also don't think that that is necessarily required. We don't have to show that they had knowledge. We have to show that there were other comparators, that they were materially in the same position as the appellants, and their licenses were granted and our licenses were not. So I would just defer to what happened at the district court for that point. Something that my colleague also brought up was the fact that, and this goes to Judge White's question, if the Class B license was okay all along, why wasn't that granted? And I believe Mr. Landis said, well, it was a flat denial. But in 2005, Mr. Angus said it's disapproved. The 2005 disapproval specifically states that it was disapproved only with respect to the Class E license. So it wasn't a flat denial. He said Class B is okay. Class E is not as far as zoning goes. And so when the Stanislaus reapplied in 2011, they did not apply for a Class E. They only applied for Class B and C, and that was denied as well. So there really is no rhyme or reason for why these applications were denied. It went back and forth, and ultimately the reasons that the township provided were all negated by the appellants. And so for that reason, I respectfully submit that the court should reverse the district court's judgment. We appreciate the arguments both of you have given, and we'll consider the matter carefully. Thank you, Your Honor.